E. J. PALMER, State Supervisor, Bureau of Land Management and James E. Keogh, Jr., Manager of Reno, Nevada, Land Office, Bureau of Land Management, Department of the Interior, Appellants,

v.

The DREDGE CORPORATION, a Nevada corp., Appellee.

J. Russell PENNY, State Supervisor, Bureau of Land Management, and Harold C. Hammitt, Manager of Reno, Nevada, Land Office, Bureau of Land Management, Department of the Interior, and John Does 1-300 and Jane Does 1-300, inclusive, Appellants,

v.

The DREDGE CORPORATION, a Nevada corp., Appellee.

Nos. 21435, 21436.

United States Court of Appeals
Ninth Circuit.

June 26, 1968.

Rehearing Denied Sept. 30, 1968.

A. Donald Mileur (argued), Roger P. Marquis, Thomas L. McKevitt Attys., Dept. of Justice, Edwin L. Weisl, Jr., Asst. Atty. Gen., Washington, D. C., Joseph L. Ward, U. S. Atty., Las Vegas, Nev., for appellants.

George Nilsson, Los Angeles, Cal., Deaner, Butler & Adamson, Las Vegas, Nev., for appellee.

Before BARNES, HAMLEY and BROWNING, Circuit Judges.

HAMLEY, Circuit Judge:

These are consolidated appeals from judgments entered in companion district court cases involving the validity of thirty-six sand and gravel mining claims located on public lands. All of the claims are owned by The Dredge Corporation (Corporation), which is the plaintiff and appellee in each case.

Twenty-eight of the claims are involved in a suit in which E. J. Palmer, Nevada State Supervisor, Bureau of Land Management (Bureau), United States Department of the Interior (Department), and others, are defendants and appellants. The remaining eight claims are involved in a suit in which J. Russell Penny, a successor state supervisor of the Bureau, and others, are defendants and appellants.[1]

All of the claims, based on the asserted discovery of sand and gravel deposits, were located on various dates ranging from July 12 to July 28, 1952. In order for these claims to be valid it is necessary that the discovered mineral deposits be "valuable." Rev.Stat. 2319 (1875), 30 U.S.C. § 22 (1964). The Secretary of the Department is charged with seeing that valid claims are recognized, invalid ones are eliminated, and the rights of the public preserved. Cameron v. United States, 252 U.S. 450, 460, 40 S.Ct. 410, 64 L.Ed. 659.

In fulfillment of this responsibility, a contest proceeding was initiated before the Bureau on October 4, 1955, involving the twenty-eight claims embraced in the Palmer case. In the charges it was al-leged, among other things, that minerals have not been found within the limits of the claims in sufficient quantity or quality to constitute a valid discovery. On December 18, 1957, a similar contest proceeding was instituted involving the eight claims embraced in the Penny case.

In determining the validity of these claims the critical question of fact was whether the discovered deposits of sand and gravel were "valuable" within the meaning of 30 U.S.C. § 22. The general test applied by the examiner in ascertaining whether the deposits were valuable was the "prudent man" test which the Secretary has been using since 1894.[2] As a further refinement of the test, the examiner held, relying on Layman v. Ellis, 52 L.D. 714 (1929), and subsequent opinions of the Solicitor General, that in the case of a mining claim located for sand and gravel it must be shown that the deposits can be extracted, removed, and marketed at a profit—the so-called "present marketability" test.

Taking into consideration the evidence produced at the agency hearing, and applying the tests referred to above, the examiner in the contest involving the twenty-eight Palmer claims determined that twenty-two claims were null and void for lack of a valid discovery of minerals. He held that there was a valid discovery as to the remaining six claims in that case and that those claims were valid.

Both the Corporation and the Government appealed to the Director of the Bureau. The Director entered a decision holding that all twenty-eight claims were null and void for lack of a valid discovery of minerals, thereby affirming the examiner as to twenty-two claims and reversing him as to six. The Corporation appealed to the Secretary of the Interior (Secretary). The deputy solicitor of the

1. The two cases will be referred to herein as the Palmer and Penny cases.

2. This test was first announced in Castle v. Womble, 19 L.D. 455, 457 (1894), and was there stated as follows:

"[W]here minerals have been found and the evidence is of such a character that a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine, the requirements of the statute have been met."

Department, acting on behalf of the Secretary, affirmed the decision of the Director.

In the contest involving the eight Penny claims, the examiner, appraising the evidence in the light of the tests referred to above, determined that all eight claims were null and void for lack of a valid discovery of minerals. The Corporation appealed to the Director of the Bureau who entered a decision affirming the examiner's decision. The Corporation then appealed to the Secretary. The deputy solicitor, acting on behalf of the Secretary, affirmed the decision of the Director.[3]

The Corporation then commenced these two actions in the United States District Court for the District of Nevada, injunctive and declaratory relief being sought. In each case defendants moved for a summary judgment, and the motions were granted. Appeals were taken and we reversed without reaching the merits, holding that plaintiffs had been denied the right of oral argument on the motions for summary judgment. Dredge Corporation v. Penny, 9 Cir., 338 F.2d 456.

After the cases were returned to the district court oral argument was had on the motions for summary judgment, and the motions were denied. The cases were thereafter submitted for decision, on March 21, 1966, under the terms of a pretrial order, the administrative record, briefs and oral argument.

Before decisions were rendered by the district court, this court, on June 21, 1966, filed an opinion in Coleman v. United States, 9 Cir., 363 F.2d 190, adhered to on petition for rehearing, 379 F.2d 555. In that opinion, this court disapproved the Department's rule, applied by the agency in Coleman and in the cases now before us, that for sand and gravel deposits to be regarded as "valuable" within the meaning of 30

U.S.C. § 22, it must be shown that the mineral can presently be extracted, removed and marketed at a profit.

On the authority of the decision of this court in Coleman, the district court, on August 8, 1966, entered judgments for plaintiffs in the Palmer and Penny cases. The court ordered that those cases be remanded to the Department for further consideration in the light of Coleman. These appeals followed.

Having in view the primary basis for the district court judgments, it is not surprising that a substantial part of the briefs on appeal in the cases now before us are devoted to the question of whether our Coleman decision is controlling so as to require affirmance of the district court judgments. Appellee Corporation, of course, takes the position in its brief that we must affirm in the light of our opinion in Coleman.

Unfortunately for the Corporation, however, our Coleman decision was reversed by the Supreme Court just eighteen days before the oral argument on these appeals. United States v. Coleman, 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170, decided April 22, 1968. The Supreme Court held that the so-called "present marketability" test is a logical complement to the "prudent man" test and an appropriate way to identify, with greater precision and objectivity, the factors relevant to a determination that a mineral deposit is "valuable."

The Supreme Court decision in Coleman necessarily presents the Palmer and Penny appeals in a new posture, which counsel for the parties recognized at the oral argument. The prime line of contention then switched from a discussion of the possible controlling effect of our decision in Coleman, to the question of whether the Secretary's decisions should be set aside on the ground that the findings of fact, on the basis of which the

---

**3.** Before the office of the Secretary acted on the Palmer and Penny agency appeals, Foster v. Seaton, 106 U.S.App.D.C. 253, 271 F.2d 836, was decided, in which the Department's "present marketability" test was approved. In the Secretary's decisions in the Palmer and Penny contests Foster v. Seaton was therefore referred to as additional authority sanctioning such a test.

Secretary concluded that all of the claims are null and void, are not supported by a sufficient quantum of evidence.

■ As above indicated, the district court did not give specific consideration to this question, but instead decided the case on the ground that, under our decision in *Coleman*, the agency had applied an inappropriate test as to the value of the deposits. It would therefore be proper for us to remand the appeals to the district court for further consideration in the light of the Supreme Court decision in *Coleman*. Since, however, the agency record and the contentions of the parties with respect to the sufficiency of the evidence are fully before us, and in view of the length of time which has transpired since the Palmer and Penny contest proceedings were initiated in 1955 and 1957, we elect to proceed with the appeals and determine all of the issues at this time.

■ The Government argues that the decisions of the Secretary upon questions of fact in cases involving the public lands are "conclusive" in the courts. We do not undertake to decide whether this is so since, at the very least, the Secretary's findings of fact ought to be upheld if they are supported by substantial evidence.[4] They are so supported in this case.

In both the Palmer and Penny cases the agency produced expert testimony tending to prove that the sand and gravel deposits were not marketable and were otherwise without "value" in the sense intended by 30 U.S.C. § 22. The Corporation attacks the expertise of the Government witnesses and also the extent of their information concerning these particular lands. It also produced conflicting testimony with regard to the Palmer claims, but offered no evidence concerning the Penny claims.

■ As stated above, the hearing examiner found that six of the claims in the Palmer case were valid. These were claims numbers 52 through 57. The examiner found that these claims are located upon land which has high value for homesite purposes. As the examiner acknowledged, this finding gave application to the rule that where such circumstances are shown, proof of the mineral value of the deposit must be specific, clear and unequivocal.[5] Nevertheless, after weighing the conflicting evidence as to these six claims, the hearing examiner found that the sand and gravel deposits had the required value and concluded therefrom that these six claims are valid.

On his review of the hearing examiner's decision in the Palmer case, the Director of the Bureau reviewed the evidence adverted to by the examiner and found to the contrary concerning the value of the deposits on these six claims. Among other things, the Director found, in effect, that even in the claim Number 54 area, which was potentially the most valuable in this group, the gravel is coated with a calcareous substance and is used only for road, parking lot and fill purposes. The Director also found that the market for materials of this quality in the Las Vegas area is "conjectural rather than actual or prospective." The Director accordingly concluded that these six claims, along with the other twenty-two claims in the Palmer case and the eight claims in the Penny case, are null and void.

The office of the Secretary affirmed the decision of the Director. In discussing the six claims of the Palmer case with regard to which the Director had

4. This is the general test applied with respect to the sufficiency of the evidence to support administrative findings of fact. S.E.C. v. Chenery Corp., 332 U.S. 194, 207, 67 S.Ct. 1575, 1760, 91 L.Ed. 1995. See also, Adams v. United States, 9 Cir., 318 F.2d 861, 873; and Standard Oil Co. of California v. United States, 9 Cir., 107 F.2d 402, 414, applying the substantial evidence test in public land cases.

5. See United States v. Lillibridge, S.D.Cal., 4 F.Supp. 204, 206; United States v. Lavenson, W.D.Wash., 206 F. 755; Helen v. Wells, 54 I.D. 306, 309 (1933).

set aside the examiner's finding of adequate value, the office of the Secretary pointed out that marketability had to exist prior to July 23, 1955, in order to fulfill the "present marketability" test. On that date, under 69 Stat. 368 (1955), as amended, 30 U.S.C. § 611 (1964), no deposits of "common varieties" of sand, stone, gravel, pumice, pumicite or cinders may be deemed a valuable mineral deposit within the meaning of the mining laws of the United States. The office of the Secretary found, in effect, that in view of the evidence, considered as a whole, no market for the sand and gravel on these six claims existed prior to July 23, 1955.[6]

In our opinion the findings of fact supporting the agency determination that all of the Palmer and Penny claims here in question are null and void are supported by substantial evidence.

■ The Corporation argues that the district court judgment setting aside the agency decision should be affirmed because the agency records are faulty and incomplete. We have looked into this matter and find the contention to be without merit. The omissions are minor, have no relevance to the issues before us, and are not, in our view, prejudicial.

■ The Corporation contends that the district court properly rejected the agency determination invalidating the Penny claims because the contest proceedings involving those claims were not commenced within the two-year period assertedly required by the proviso to section 7 of the Act of March 3, 1891, 26 Stat. 1098 (1891), as amended, 43 U.S.C. § 1165 (1964). However, as defendants point out, the Act of March 3, 1891 applies only to entrymen under the homestead, timber-culture, desert-land or pre-emption laws. It has no application to the mining laws or to persons making claims under the mining laws.

The judgments are reversed and the causes are remanded with directions to enter judgments for the defendants. As indicated above, the responsibility for this reversal rests with this court because of its erroneous decision in *Coleman*, which decision the district court was required to follow at the time the cases were before it.

---

6. The office of the Secretary further found that the only evidence of the existence of a market for the sand and gravel in these claims is in " * * * reference to a prospective market which may develop as a result of a future road building program under the Federal Highway Act."