Yale SIMONS, Petitioner-Appellant,

v.

UNITED STATES of America, Respondent-Appellee.

No. 71-2263.

United States Court of Appeals, Ninth Circuit.

May 8, 1974.

A. Alexander Katz (argued), Phoenix, Ariz., for petitioner-appellant.

Michael B. Scott (argued), William C. Smitherman, U. S. Atty., N. Warner Lee, Asst. U. S. Atty., Phoenix, Ariz., for respondent-appellee.

Sheldon Mitchell, American Civil Liberties Union, Phoenix, Ariz., for amicus curiae.

Before CARTER and HUFSTEDLER, Circuit Judges, and PREGERSON,* District Judge.

HUFSTEDLER, Circuit Judge:

Simons appeals from dismissal of his action for lack of jurisdiction.

The facts of this case may be gleaned from the pleadings and the affidavits in support of the motions of Simons and the Government for summary judgment. Simons is a public spirited citizen whose chief interest is the rehabilitation of ex-convicts. He is the founder of a nationwide organization, "The 7th Step Foundation," dedicated to assisting ex-convicts to become useful members of society. In the course of the foundation's program, Simons learned that an ex-convict named Hand, who was actively engaged in rehabilitation work for the foundation, had been helping another ex-convict, George Hargrove. Hand knew that Hargrove had a job waiting for him if he could obtain a car for transportation. Simons knew, of course, that Hargrove had a criminal record. Hand and Hargrove were among more than 100 ex-convicts whom the foundation had been assisting. Hand, Simons, and Hargrove all signed a promissory note payable to an Arizona bank to enable Hargrove to obtain financing to purchase an automobile. Hargrove became the registered owner of the vehicle and executed a security agreement in favor of the bank. Hargrove made the payments to the bank until, on May 11, 1969, about two months after the purchase of the automobile, the Treasury Department seized the vehicle, under the provisions of 49 U.S.C. § 782, because Hargrove had been charged with transporting an illegal, unregistered firearm (26 U.S.C. §§ 5841, 5845(a)) in the ve-

---

* Central District of California.

hicle. The charges against Hargrove were later dismissed.

Almost immediately after the seizure, on May 15, 1969, Hargrove ceased and Simons began making payments for the car. On May 19, 1969, Simons, in a telephone conversation with Stan Cook, described in Simons' affidavit merely as "the Federal Agent in Charge," told Cook of Simons' interest in the seized automobile. Nearly two months after Simons' conversation with agent Cook, the Alcohol, Tobacco, and Firearms Division of the Treasury Department mailed to the bank and published in an Arizona newspaper notices of the impending forfeiture of the automobile. Because no one timely filed the required claim and cost bond (*see* 19 U.S.C. § 1608), the car was administratively forfeited (*see* 19 U.S.C. § 1609) on July 29, 1969. Simons apparently was notified personally neither of the imminence of the forfeiture nor, later, of the fact that the car had been administratively forfeited.

First the bank and then Simons sought administrative relief from forfeiture. The bank's application for remission from forfeiture was denied on November 3, 1969, by the Alcohol, Tobacco and Firearms Division of the Treasury Department on the ground that the bank "failed to satisfactorily establish that through the exercise of reasonable diligence it could not have ascertained that at the time of the transaction, the person dealt with possessed a record and a reputation as a violator of the laws relating to commercial crimes." Simons filed a formal petition with the Treasury Department on October 7, 1969, seeking remission, and, pursuant to the Department's request, he filed an amended petition. After failing to receive any notice of disposition from the Department, he filed this action in the district court on March 9, 1970. The same day Simons was notified that his request for administrative relief had

been denied. The Government then sold the automobile.

In the proceeding he filed in the district court, Simons initially sought remission of the forfeiture of the automobile. Before any pleading was filed by the Government, Simons filed an amended pleading modifying the caption and minor portions of the complaint. Also before any responsive pleading was filed, Simons moved for summary judgment, and the Government filed a countermotion for summary judgment and a motion to dismiss. In Simons' reply to the Government's motions, he prayed that the complaint be deemed amended to conform to the facts developed during the motions procedure, including the facts that "no notice of the forfeiture, other than the purported publication, was given Simons; that the car has been sold; that $250.00 was realized; that [Simons] claims that [the district court] has jurisdiction under the Tucker Act; and that [Simons] is entitled to damages based upon the appraised value of the car." The district court denied Simons' motion for summary judgment and granted the Government's motion to dismiss for lack of jurisdiction. Upon appeal, we remanded to the district court to ascertain whether the court deemed the petition amended to state a claim under the Tucker Act (28 U.S.C. § 1346(a)(2)), as appellant had requested, before the court dismissed the action. The record contained no ruling on the request for amendment. The district court responded that it "did not deem the petition amended to state a claim under the Tucker Act for the reasons stated by Judge Carter in his opinion filed simultaneously with the above-mentioned order, and had the court so considered the petition as amended it still would have dismissed for the reasons stated by Judge Carter in his dissenting opinion."[1] The case is before us on resubmission.

 If the district court correctly refused to deem the amendments made

---

1. Judge Carter's dissent from the panel's remand order is reported at 480 F.2d 805.

to the petition, the court was also correct in dismissing the cause for lack of jurisdiction, because there was no foundation for federal jurisdiction of the cause as pleaded in the original or the first amended petitions. Our court holds that a district court has no jurisdiction to remit or to mitigate a forfeiture, other than a forfeiture for violating internal revenue laws relating to liquor. (*E. g.,* United States v. One 1967 Ford Mustang (9th Cir. 1972) 457 F.2d 931; United States v. Bride (9th Cir. 1962) 308 F.2d 470; United States v. Andrade (9th Cir. 1950) 181 F.2d 42.)

■■ The district court should have deemed the pleading amended for the purpose of ruling on the motion to dismiss, unless the amendment would have been futile. (Foman v. Davis (1962) 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222; Breier v. Northern California Bowling Proprietors' Ass'n (9th Cir. 1963) 316 F.2d 787.) [2]

■ The amendment would not have been futile because a complaint so amended would state a claim for relief under the Tucker Act, 28 U.S.C. § 1346(a)(2). (Menkarell v. Bureau of Narcotics (3d Cir. 1972) 463 F.2d 88; United States v. One 1961 Red Chevrolet Impala Sedan (5th Cir. 1972) 457 F.2d 1353; Jaekel v. United States (S.D.N.Y.1969) 304 F.Supp. 993; *cf.* Ramsey v. United States (9th Cir. 1964) 329 F.2d

432 (*semble*).) Relief under the Tucker Act is founded on the legal theory that the forfeiture was unlawful, rather than on the theory that, even if the forfeiture was lawful, the claimant is an innocent party who should be given discretionary relief from the effects of the forfeiture. The former theory relates to the propriety of the forfeiture; the latter concerns the manner of disposing of property properly forfeited (*see* 19 U.S.C. § 1613). It is not inconsistent, therefore, to hold both that district courts are without jurisdiction to remit or mitigate forfeitures and that district courts have jurisdiction to award relief from unlawful forfeitures. While the Secretary has been given sole power to mitigate the effects of proper forfeitures, he has not been given sole power to determine the propriety of the forfeitures themselves. Thus, in *Andrade, Bride,* and *One 1967 Ford Mustang,* the court evaluated the propriety of each forfeiture; after the forfeiture was held lawful in each case, the court ruled that the district courts were powerless to mitigate the impact of the forfeitures. The amendment should therefore have been allowed; accordingly, when the pleading is deemed amended, as it must be, the dismissal for lack of jurisdiction was error.

Of course, Simons may be unable to prove that he had a valid interest in the vehicle at the time it was forfeited (*i.*

2. "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. . . . If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" (371 U.S. at 182.)

Of the factors that *Foman* indicates might justify a refusal to grant leave to amend, only "futility of amendment" is even argua-

bly relevant in this case. Nor do any technical defects in Simons' motion to amend justify the district court's refusal to allow the amendment. The fact that the initial pleading was verified by Simons rather than subscribed by his lawyer (*see* Fed.R.Civ.P. 11) was inadequate basis for refusing to deem the pleading amended for the purpose of passing on a motion to dismiss. The deficiency could easily have been cured had it been called to Simons' attention. (*See* Burak v. Pennsylvania (E.D.Pa.1972) 339 F. Supp. 534, 535 n. 2.) Nor was it proper to refuse to treat Simons' pleading as amended merely because he did not denominate his request a "motion for leave to amend" (*see* Davis v. Yellow Cab Co. (E.D.Pa.1964) 35 F.R.D. 159, 162) and did not tender formal amendments (*see* Smith v. Blackledge (4th Cir. 1971) 451 F.2d 1201).

e., that the forfeiture deprived him of "property" within the meaning of the due process clause). He may also be unable to prove that, even if he had a protected property interest in the car, his interest was sufficiently significant and the circumstances were such that the notice given by the Government did not comport with the requirements of due process. (*Cf.* Mullane v. Central Hanover Bank & Trust Co. (1950) 339 U.S. 306, 317–318, 70 S.Ct. 652, 94 L.Ed. 865.) But those questions were not reached by the district court, and they cannot be resolved until the record is clarified and amplified either by additional affidavits directed towards summary judgment, or, in the event a material issue of fact emerges, by trial.

■ Simons' attempted appeal from denial of summary judgment, a nonappealable order, is dismissed. The judgment is reversed.

JAMES M. CARTER, Circuit Judge (dissenting):

I incorporate my dissent from the prior decision in this case, Simons v. United States (9 Cir. 1973) 480 F.2d 805.

I add the following. The majority details Simons' interest and activities in rehabilitating ex-convicts. This has nothing to do with the legal problem involved.

The basis for the majority holding is footnote 3—viz., that "it is not inconsistent to hold both that the district courts are without jurisdiction to remit or mitigate forfeitures . . . and that district courts have jurisdiction to award relief from unlawful forfeitures." (Emphasis added)

The word "remit" is defined as "to absolve; to release from punishment or penalty; to annul a fine or forfeiture; . . . to release; to relinquish; to remove; to discharge from." 76 C.J.S. p. 905. Thus the word is broad enough

to "grant relief from unlawful forfeitures," the phrase used by the majority.

Since our ninth circuit cases cited in my prior dissent hold that a district court has no jurisdiction to remit a penalty (grant relief from a forfeiture), the decision flies in the face of our decisions and an in banc should be required to overrule them.

The majority decision will do nothing but cause trouble. Granting jurisdiction to the district courts to remit or set aside forfeitures on the suit of private persons will: (1) by-pass the exclusive authority granted by the Congress to the Secretary of the Treasury, now Attorney General, to decide whether or not to remit a forfeiture, and (2) increase the number of filings in the now overcrowded district courts.

The judgment below should be affirmed.