John E. WIREN, Plaintiff-Appellant,

v.

Donald EIDE, as District Director of the Bureau of Customs, et al., Defendants-Appellees.

No. 74–1169.

United States Court of Appeals, Ninth Circuit.

June 22, 1976.

As Corrected July 9, 1976.

Richard D. Emery (argued), of The Northwest Washington Legal Services, Seattle, Wash., for plaintiff-appellant.

Charles Mansfield, Asst. U. S. Atty. (argued), Seattle, Wash., for defendants-appellees.

Before CHAMBERS, KOELSCH and KILKENNY, Circuit Judges.

KOELSCH, Circuit Judge:

On his return from Canada in February, 1972, appellant Wiren and the three passengers in his 1970 Volkswagen were stopped and searched at the Blaine, Washington, border station. When a body search of one of the passengers revealed a small quantity of hashish, customs agents seized Wiren's car as a vehicle used to transport contraband into the United States.[1] Immediately thereafter, Wiren—claiming he had no knowledge of the presence of hashish—petitioned the Secretary of the Treasury under 19 U.S.C. § 1618 for a remission or mitigation of the impending forfeiture of his car.[2]

---

1. 19 U.S.C. § 1595a(a). *See also* 18 U.S.C. § 545 and 21 U.S.C. §§ 881 and 952.

2. The "heart" of the federal statutory forfeiture scheme, at least for purposes of this appeal, consists of the following provisions of Title 19:

"§ 1606. Same [Seizure]; appraisement

"The appropriate customs officer shall determine the domestic value, at the time and place of appraisement, of any vessel, vehicle, merchandise, or baggage seized under the customs laws.

"§ 1607. Same; value $2,500 or less

"If such value of such vessel, vehicle, merchandise, or baggage does not exceed $2,500, the appropriate customs officer shall cause a notice of the seizure of such articles and the intention to forfeit and sell or otherwise dispose of the same according to law to be published for at least three successive weeks in such manner as the Secretary of the Treasury may direct. For the purposes of this section and sections 1610 and 1612 of this title merchandise the importation of which is prohibited shall be held not to exceed $2,500 in value.

"§ 1608. Same; claims; judicial condemnation

"Any person claiming such vessel, vehicle, merchandise, or baggage may at any time within twenty days from the date of the first publication of the notice of seizure file with the appropriate customs officer a claim stating his interest therein. Upon the filing of such claim, and the giving of a bond to the United States in the penal sum of $250, with sureties to be approved by such customs officer, conditioned that in case of condemnation of the articles so claimed the obligor shall pay all the costs and expenses of the proceedings to obtain such condemnation, such customs officer shall transmit such claim and bond, with a duplicate list and description of the articles seized, to the United States attorney for the district in which seizure was made, who shall proceed to a condemnation of the merchandise or other property in the manner prescribed by law.

"§ 1609. Same; summary of forfeiture and sale

"If no such claim is filed or bond given within the twenty days hereinbefore specified, the appropriate customs officer shall declare the vessel, vehicle, merchandise, or baggage forfeited, and shall sell the same at public auction in the same manner as merchandise abandoned to the United States is sold, or otherwise dispose of the same according to law and shall deposit the proceeds of sale, after deducting the actual expenses of seizure, publication, and sale in the Treasury of the United States.

"§ 1610. Same; value more than $2,500

"If the value of any vessel, vehicle, merchandise, or baggage so seized is greater than $2,500, the appropriate customs officer shall transmit a report of the case, with the names of available witnesses, to the United

That petition was denied, as was a subsequent appeal to the Bureau of Customs.

■ In November, 1972, after making an informal telephone inquiry, Wiren received by unregistered mail a letter informing him of the government's intention to forfeit the vehicle which it had appraised, pursuant to 19 U.S.C. § 1606, at less than $2500. He then filed a claim in accordance with the provisions of 19 U.S.C. § 1608, but did not post the requisite $250 bond because, as he now alleges, he was indigent at the time. However, there being no statutory procedure for Wiren to call this indigent condition to the attention of the Bureau of Customs and no procedure for him to halt the summary forfeiture mandated by 19 U.S.C. § 1609, Wiren filed this action along with a motion to proceed in forma pauperis and an affidavit of poverty. He sought a determination of the constitutionality of the notice, bond, and burden-of-proof provisions contained in the federal statutory forfeiture scheme, a hearing on the merits of his claim that the seizure and impending forfeiture of his car are unconstitutional, and the return of his car together with damages.[3] Appellees agreed to stay forfeiture proceedings pending disposition of this action.

The district court granted appellees' motion to dismiss, although it is uncertain from that order whether the dismissal was predicated on jurisdictional grounds or on the merits. We are clear that jurisdiction did exist and that Wiren's procedural claims entitle him to a hearing on the merits of his substantive claim. We therefore remand the matter for a clear disposition on the merits of the substantive claim.

■ The district court had subject matter jurisdiction of this action. Insofar as Wiren's claim is one for money damages not exceeding $10,000 in amount, the district court was empowered to reach the merits of that claim by the Tucker Act, 28 U.S.C. § 1346(a)(2). *Simons v. United States,* 497 F.2d 1046, 1049–1050 (9th Cir. 1974); *Wells v. United States,* 280 F.2d 275, 277 (9th Cir. 1960); *Carriso, Inc. v. United States,* 106 F.2d 707, 712 (9th Cir. 1939). *See also Bramble v. Richardson,* 498 F.2d 968, 970 (10th Cir. 1974), *cert. denied,* 419 U.S. 1069, 95 S.Ct. 656 (1974); *Pasha v. United States,* 484 F.2d 630, 632–633 (7th Cir. 1973); *United States v. One 1965 Chevrolet Impala Convertible,* 475 F.2d 882, 884–885 (6th Cir. 1973); *Menkarell v. Bureau of Narcotics,* 463 F.2d 88, 90 (3d Cir. 1972); *United States v. One 1961 Red Chevrolet Impala Sedan,* 457 F.2d 1353, 1356–1357 (5th Cir. 1972); *Jaekel v. United States,* 304 F.Supp. 993, 996–998 (S.D.N.Y.1969); and cases therein cited.

■ Similarly, § 10 of the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706, also conferred subject matter jurisdiction on the district court. Despite a split in

States attorney for the district in which the seizure was made for the institution of the proper proceedings for the condemnation of such property."

3. Though Wiren's amended complaint contains an apparent request for injunctive relief, this action is not one in which the empanelment of a three-judge court is required under 28 U.S.C. § 2282. That Wiren seeks no injunctive relief such as would necessitate a three-judge court is made plain by his statement of the nature of the case in each of his complaints (R. 1, 7), by his failure plainly to request a three-judge court as required by local rule of the United States District Court for the Western District of Washington, by his clear written concession at two separate junctures in the record that he seeks no injunctive relief (R. 32–33, 57), and by his similar admission in brief (Pet. for Reh. 1, 3). In this connection, the record before us

bears a striking similarity to that described by the Supreme Court in *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 152–155, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), in which—despite a request for injunction in the third amended complaint—the record indicated "that the issues were framed so as not to contemplate any injunctive relief." 372 U.S. at 153, 83 S.Ct. at 559. Under *Mendoza-Martinez,* a mere request for declaratory relief, not coupled with a request for injunctive relief, may be disposed of on the merits by a single-judge court; if granted, such declaratory relief affects the relevant Act of Congress, if at all, "in a totally noncoercive fashion" and does not constitute an "interdiction of the operation at large of the statute." 372 U.S. at 155, 83 S.Ct. at 560; *see also New Orleans Book Mart, Inc. v. Mitchell,* 318 F.Supp. 352, 353 (M.D.Fla.1970), *affirmed,* 401 U.S. 968, 91 S.Ct. 1199, 28 L.Ed.2d 319 (1971).

the circuits on the question, *see, e. g., Sanders v. Weinberger,* 522 F.2d 1167, 1169–1170 (7th Cir. 1975), this court has repeatedly taken the position that § 10 of the APA embodies an independent grant of subject matter jurisdiction to review agency action, irrespective of the amount in controversy, unless the questioned action is committed by law to the discretion of the agency or there is clear and convincing evidence of congressional intent to preclude review expressed in the governing statute or its legislative history. *See Proietti v. Levi,* 530 F.2d 836, 838 (9th Cir. 1976); *Rothman v. Hospital Service of Southern California,* 510 F.2d 956, 958–959 (9th Cir. 1975); *Brandt v. Hickel,* 427 F.2d 53, 55–56 n.2 (9th Cir. 1970); *State of Washington v. Udall,* 417 F.2d 1310, 1319–1320 (9th Cir. 1969); *Coleman v. United States,* 363 F.2d 190 (9th Cir. 1966), *reversed on other grounds,* 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170 (1968); *Adams v. Witmer,* 271 F.2d 29 (9th Cir. 1959). *See also Strickland v. Morton,* 519 F.2d 467, 468 (9th Cir. 1975); *Ness Investment Corp. v. U. S. Department of Agriculture, Forest Service,* 512 F.2d 706, 715 (9th Cir. 1975); C. Byse and J. Fiocca, *Section 1361 of the Mandamus and Venue Act of 1962 and "Nonstatutory" Judicial Review of Federal Administrative Action,* 81 Harv.L. Rev. 308, 326–331 (1967); K. Davis, Administrative Law Treaties § 23.02 (Supp.1970). While the remission or mitigation of lawful seizures and forfeitures is a matter committed to agency discretion, *see* 19 U.S.C. §§ 1613 and 1618,[4] the determination of the propriety of the seizures and forfeitures themselves is not. *See Simons, supra,* 497 F.2d at 1049. We think it apparent that subject matter jurisdiction is additionally furnished by § 10 of the APA.[5]

■ Turning now to Wiren's procedural contentions, we note that his claim of entitlement to pre-seizure notice and opportunity for a hearing was resolved against him in *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). There the Court held that the absence of pre-seizure notice and the opportunity for a hearing in the context of forfeiture proceedings is not a denial of due process; the seizure of property for purposes of forfeiture is an "extraordinary situation" justifying postponement of notice and hearing requirements. 416 U.S. at 676–680, 94 S.Ct. 2080.[6]

---

**4.** *But see United States v. U. S. Coin & Currency,* 401 U.S. 715, 721, 91 S.Ct. 1041, 1045, 28 L.Ed.2d 434 (1971), in which the Court said of the remission/mitigation function:

"It is not to be presumed that the Secretary will not conscientiously fulfill this trust, and the courts have intervened when the innocent petitioner's protests have gone unheeded.

**5.** Assuming *arguendo* that the foregoing provisions fail for any reason to furnish a sufficient jurisdictional basis for the district court to reach the merits of Wiren's claims, the supposed jurisdictional void is filled by the federal mandamus statute, 28 U.S.C. § 1361. That section provides jurisdiction to enforce a constitutional duty which—though perhaps not clear beyond all doubt at the outset of the litigation—is rendered plain by the court's subsequent decision on the merits. *Knuckles v. Weinberger,* 511 F.2d 1221, 1222 (9th Cir. 1975); *Workman v. Mitchell,* 502 F.2d 1201, 1205–1206 (9th Cir. 1974). *See also United States v. Testan,* 424 U.S. 392, 401 n.5, 403–404, 96 S.Ct. 948, 954, n.5, 955–956, 47 L.Ed.2d 114 (1976), which the dissenter likens to this case. All that is required to invoke jurisdiction under § 1361 is that the constitutional claim presented not be insubstantial; for if we were bound first to determine the existence of the duty, we would be disposing of the case on its merits—an exercise wholly inappropriate in deciding the threshold question of jurisdiction.

We note parenthetically that the issuance of a writ of mandamus is an extraordinary remedy. The assumption of mandamus jurisdiction is inappropriate where an adequate remedy is otherwise available or the complaint does not sufficiently allege the existence of irreparable injury.

**6.** On the other hand, once seizure is accomplished, the justifications for postponement enumerated in *Calero-Toledo* evaporate, *see* 416 U.S. at 679–680, 94 S.Ct. 2080, and due process requires that notice and opportunity for some form of hearing be accorded swiftly, and, in any event, prior to forfeiture. *See, e. g., Fuentes v. Shevin,* 407 U.S. 67, 88–93, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Goldberg v. Kelly,* 397 U.S. 254, 267–268, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 342, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

Wiren nevertheless contends that the post-seizure notice provision contained in 19 U.S.C. § 1607—providing solely for notice by publication—violates due process because it prescribes a method of notice not "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

We are sympathetic to that claim. At least two federal courts dealing with the question have ruled that the notice by publication prescribed by § 1607 is inadequate to afford due process with respect to persons such as registered owners of seized vehicles whose identities and addresses are known or easily ascertainable and whose legally protected interests are directly affected by the proceedings in question. *Menkarell v. Bureau of Narcotics,* 463 F.2d 88, 93–95 (3d Cir. 1972); *Jaekel v. United States,* 304 F.Supp. 993, 998–999 (S.D.N.Y. 1969). *See also Robinson v. Hanrahan,* 409 U.S. 38, 39–40, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972). *Cf. Calero-Toledo, supra,* 416 U.S. at 680 n.15, 94 S.Ct. 2080.

■ However, we conclude on balance that Wiren's receipt of actual notice deprives him of standing to raise the claim and therefore do not reach it. Having received such notice, Wiren has clearly been accorded due process in the application of the statute as to him personally. The essence of his claim is therefore that the statutory notice procedure is inadequate under the fifth amendment with respect to supposed third parties who receive no actual notice of the seizure and impending forfeiture of their property. The law governing the standing of litigants to assert constitutional claims of third parties not before the court is anything but clear.[7] However, we are doubtful that Wiren has a sufficient interest in challenging the statute's notice

provision to satisfy the "case or controversy" requirement of Article III of the Constitution. The Court has expressed concern lest the standards of that requirement become blurred, *see Eisenstadt v. Baird,* 405 U.S. 438, 443 n.4, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), and here we think that Wiren's allegations of injury-in-fact are insufficient to sustain it. *See generally Schlesinger v. Reservists to Stop the War,* 418 U.S. 208, 216–227, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1975).

Moreover, even if a sufficient "case or controversy" were presented with respect to the statutory notice provision, we think the Court's self-imposed rules of restraint, *see United States v. Raines,* 362 U.S. 17, 21–22, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960), would be controlling. True, there does exist a line of Supreme Court authority containing language to the effect that a litigant is not deprived of his ability to challenge a statutory notice provision simply because he may have received as a matter of administrative favor or grace, extra-official or casual notice not prescribed by the statute. *See Wuchter v. Pizzuti,* 276 U.S. 13, 24–25, 48 S.Ct. 259, 72 L.Ed. 446 (1928); *Coe v. Armour Fertilizer Works,* 237 U.S. 413, 424–425, 35 S.Ct. 625, 59 L.Ed. 1027 (1915); *Central of Georgia Railway Co. v. Wright,* 207 U.S. 127, 138, 28 S.Ct. 47, 52 L.Ed. 134 (1907); *Security Trust and Safety Vault Co. v. Lexington,* 203 U.S. 323, 333, 27 S.Ct. 87, 51 L.Ed. 204 (1906). But those cases must be read in light of the Court's subsequent pronouncements in *Raines, supra,* 362 U.S. at 20–24, 80 S.Ct. 519. Moreover, the existence of standing in *Wuchter* has been explained as being predicated on the nonseparability of application of the challenged statute there, *see* Sedler, *supra* note 6, 71 Yale L.J. at 609, while here there is clear congressional intent that the challenged statute have separable application. 19 U.S.C. § 1652. *See also National Equipment Rental, Ltd. v. Szukhent,* 375 U.S. 311, 315, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964),

---

7. *See, e.g.,* Note, *Standing to Assert Constitutional Jus Tertii,* 88 Harv.L.Rev. 423, 423 nn.1–3 (1974); Albert, *Standing to Challenge Administrative Action: An Inadequate Surro-* gate for Claim for Relief, 83 Yale L.J. 425, 464–473 (1974); Sedler, *Standing to Assert Constitutional Jus Tertii in the Supreme Court,* 71 Yale L.J. 599, 600–612 (1962).

otherwise distinguishing *Wuchter.* We recognize that our ruling raises a risk that the due process rights of innocent third parties may thereby be diluted, but our concern is somewhat diminished by the observation that persons who had failed to receive actual notice were nevertheless capable of vindicating their rights in *Menkarell* and *Jaekel.*

[7] No such problem of standing exists with respect to Wiren's challenge to the statutory bond requirement. Absent a constitutional deficiency in the application of that provision here, Wiren's failure timely to post the bond after receiving valid notice of the proceedings would, under the statutory scheme, stand as a waiver of his opportunity for a hearing, thus permitting appellees to proceed with the summary forfeiture and thereby disposing of the case in its entirety. We therefore examine the merits of his claim.

■ Broadly stated, Wiren's contention is that the $250 bond requirement violates his rights to due process and equal protection [8] under the fifth amendment; he forcefully argues that the application of that requirement here operates to deprive him of a significant property interest without according him the opportunity for a hearing solely because he is indigent. We agree.

The federal statutory forfeiture scheme uniformly accords owners of seized property valued at more than $2500 the opportunity for a judicial hearing. Under 19 U.S.C. § 1610, the forfeiture of property so valued is permitted solely by means of judicial condemnation. Non-indigent owners of property valued at less than $2500 are likewise accorded the opportunity for a judicial determination if they file a claim with the appropriate customs officer and post a $250 bond. *See* 19 U.S.C. § 1608, *supra* note 2.

However, indigent persons claiming an interest in seized property valued at less than $2500 are treated in an entirely different fashion. By force of the statute, their economic inability to post the bond deprives them of the opportunity for any hearing at all. Yet it is these persons to whom the deprivation of property is proportionately most grievous.

It is true that the bond requirement may operate to prevent the government's being deterred from pursuing a meritorious condemnation because the expense of the proceeding may well exceed the value of the property which the government seeks to condemn. *See Colacicco v. United States,* 143 F.2d 410, 411–412 (2d Cir. 1944) (L. Hand, J.). However, we cannot believe that Congress either intended to, or may consistently with the Constitution, make enforcement of the forfeiture laws, the primary contemporary justification of which is punishment and deterrence, *see Calero-Toledo, supra,* 416 U.S. at 681–682 n.19, 686, 94 S.Ct. 2080, a profitable or self-supporting operation by denying the fifth amendment rights of the poor. We can only conclude that in this case—under both due process and equal protection analyses—the fifth amendment prohibits the federal government from denying the opportunity for a hearing to persons whose property has been seized and is potentially subject to forfeiture solely because of their inability to post a bond.

In *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), the Court held that due process prohibits a state from denying, solely because of inability to pay court filing and other fees, access to its divorce courts. However, in *United States v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), the Court held *Boddie* inapplicable to a challenge to filing fee re-

---

8. Wiren relies on language in Supreme Court decisions to the effect that, "while the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is 'so unjustifiable as to be violative of due process.'" *See Shapiro v. Thompson,* 394 U.S. 618, 641–642, 89 S.Ct. 1322, 1335, 22 L.Ed.2d 600 (1969) [*quoting Schneider v. Rusk,* 377 U.S. 163, 168, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964), and *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954)]. He argues that the fifth amendment's due process clause imposes no less an obligation upon the federal government than the fourteenth amendment does upon the states. A recent Supreme Court decision supports that view. *Weinberger v. Wiesenfield,* 420 U.S. 636, 638 n.2, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975).

quirements by an indigent seeking a discharge in bankruptcy. And in *Ortwein v. Schwab,* 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973), it concluded that *Kras,* not *Boddie,* governed a challenge to a state court filing fee by an indigent seeking review of agency reductions in welfare payments, where evidentiary hearings on the administrative level provided a procedure, not conditioned on payment of a fee, through which appellants could seek redress.

■ We think the case before us is governed by *Boddie,* not *Kras* and *Ortwein.* While the Court in *Kras* indicated that the claimant there had no constitutional right to a discharge in bankruptcy, here Wiren clearly has a right to a hearing of some sort, and a judicial hearing—though perhaps not otherwise constitutionally required—is the only form of hearing contemplated by the statutory scheme. In this connection, we do not consider remission or mitigation proceedings an adequate substitute; in those proceedings, the granting of relief is purely a matter of administrative grace. Once an administrative agency has seized property for purposes of forfeiture, the sole remedy of a claimant, absent a purely voluntary remission or mitigation, is a court judgment that forfeiture is inappropriate. The statutory bond requirement—at least as it is applied here—denies that remedy to the indigent claimant. Moreover, the mere possibility that such a claimant may have the perseverance and insight to commence a collateral action in forma pauperis, as Wiren did here, coupled with the more remote possibility that the agency may voluntarily suspend forfeiture proceed-

ings pending disposition of that action, also strikes us as inadequate. That procedure is complicated, burdensome, and—as the case before us amply demonstrates—time-consuming, neither anticipated by the statutory scheme nor adequate to insure protection of an indigent claimant's rights. Turning to the question left unanswered by Judge Hand in *Colacicco, supra,* 143 F.2d at 411, 412, we reject the proposition that the forma pauperis provisions of 28 U.S.C. § 1915(a) afford an indigent claimant a means of obtaining relief from the bond requirement. That section applies solely to court proceedings, *see Boyden v. Commissioner of Patents,* 142 U.S.App.D.C. 351, 441 F.2d 1041, 1044 (1971), *cert. denied,* 404 U.S. 842, 92 S.Ct. 139, 30 L.Ed.2d 77 (1971); *cf. Kras, supra,* 409 U.S. at 439–440, 93 S.Ct. 631, while here under the statute a failure to post bond mandates summary administrative forfeiture and the forbearance of court proceedings in which the provisions of § 1915 might be applied.

■ Having determined that the instant application of the bond requirement operated unconstitutionally to deprive Wiren of the opportunity for a hearing, we might in other circumstances return the cause to the district court with directions to order appellees to commence the judicial condemnation action contemplated by the statute. Here, however, that circuitous procedural route serves no purpose save additional delay. Wiren is entitled to a hearing on the merits of his substantive claim; since he has raised it in the court below, we see no reason why the district court should not now consider and clearly dispose of it.[9]

---

**9.** Wiren's complaint generally outlines the circumstances of the seizure of his car and contains an allegation that Wiren himself had no knowledge that his passenger was carrying contraband. While the Court held in *Calero-Toledo* that the applicability of forfeiture schemes to the property of innocents does not necessarily render such schemes unconstitutional, it relied heavily on the fact that the "innocent" party there had voluntarily entrusted the possession of the seized property to another, *see* 416 U.S. at 688, 690, 94 S.Ct. 2080. Moreover, the Court pointed out that

"it would be difficult to reject the constitutional claim of an owner . . . who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property; for, in that circumstance, it would be difficult to conclude that forfeiture served legitimate purposes and was not unduly oppressive."

416 U.S. at 689–690, 94 S.Ct. at 2094 (footnote and citations omitted).

Proof that Wiren never voluntarily surrendered possession of the seized vehicle to the

VACATED AND REMANDED.[10]

CHAMBERS, Circuit Judge (concurring):

presumably culpable passenger, that he had no knowledge that the passenger possessed the contraband, and that his ignorance was reasonable under the circumstances might well place him beyond the reach of the general rule stated in *Calero-Toledo* or bring him within the exception above noted. But we leave these questions for the district court.

We note in passing that Wiren's constitutional attack on the burden-of-proof requirements of 19 U.S.C. § 1615 appears to have been rejected in our recent decision in *United States v. One 1970 Pontiac GTO, 2-Door Hardtop,* 529 F.2d 65, 66 (9th Cir. 1976).

**10.** With respect to Tucker Act jurisdiction, the dissenter's conclusion is that "a complaint [which] intermingles a claim for a money judgment with the demand for equitable relief . . is beyond the pale of the Act." But as was made plain in *Glidden Co. v. Zdanok,* 370 U.S. 530, 557, 82 S.Ct. 1459, 1476, 8 L.Ed.2d 571 (1962) (Harlan, J., announcing the judgment of the Court), the limitation upon which the dissent relies is "a limitation upon the *remedial powers* of a federal court." (Emphasis supplied.) Logically it would follow that the limitation is properly invoked by the district court's declining jurisdiction only in suits in which the sole relief requested is equitable in nature, not in suits in which money damages of less than $10,000 are additionally sought.

Hence the federal courts which have considered that limitation have uniformly taken great care to point out that the limitation divests a district court of Tucker Act jurisdiction only where no request for money damages has been made. *See March v. United States,* 165 U.S.App.D.C. 267, 506 F.2d 1306, 1310–1311 n.6 (1974); *Wells v. United States,* 280 F.2d 275, 277 (9th Cir. 1960); *Blanc v. United States,* 244 F.2d 708, 709 (2d Cir. 1957), cert. denied, 355 U.S. 874, 78 S.Ct. 126, 2 L.Ed.2d 79 (1957); *Clay v. United States,* 93 U.S.App.D.C. 119, 210 F.2d 686 (1953), cert. denied, 347 U.S. 927, 74 S.Ct. 530, 98 L.Ed. 1080 (1954); *Lynn v. United States,* 110 F.2d 586, 588 (5th Cir. 1940). *See also Jersey Central Power & Light Co. v. Local Union 327,* 508 F.2d 687, 698 n.31 (1975); *Lindy v. Lynn,* 501 F.2d 1367, 1369 (3d Cir. 1974); *Hunsucker v. Phinney,* 497 F.2d 29, 36 (5th Cir. 1974), cert. denied, 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975); *Richardson v. United States,* 465 F.2d 844, 849 n.2 (3d Cir. 1972); *Bower v. United States,* 347 F.Supp. 1252, 1255 (W.D.Pa.1972).

The essence of the dissenting view appears to be that Tucker Act jurisdiction may not be exercised, even where it is present under the plain terms of the Act itself, where a complaint contains an additional request for relief not authorized by the Act. However, as was pointed out by the Court in *United States v. Sher-*

Since, as Judge Koelsch amply demonstrates, the district court had jurisdiction

*wood,* 312 U.S. 584, 591, 61 S.Ct. 767, 772, 85 L.Ed. 1058 (1941), "the methods by which the jurisdiction of the federal courts is to be exercised" are governed by the Federal Rules of Civil Procedure, and Rules 8(a), (e)(2), and (f), which govern the construction of pleadings, clearly mandate the exercise of jurisdiction over the damages claim in the instant case.

The dissenting view also appears to rest on the conclusion that several recent Supreme Court decisions somehow altered or overruled prior law consistently applied in the circuits. The most recent of those decisions, *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), provides no support whatever for the proposition that the "intermingling" of requests for equitable relief and money damages precludes Tucker Act jurisdiction. In *Testan,* the Court of Claims—relying on the Tucker Act as its jurisdictional basis—had ordered the federal Civil Service Commission to reconsider a classification decision on the theory that retroactive reclassification would result in the plaintiffs' entitlement to money damages in the form of backpay. However, the Supreme Court reversed, holding that (1) the Tucker Act confers jurisdiction only where a substantive right of action otherwise exists (424 U.S. 392 at 397–399, 96 S.Ct. 948 at 952–953, 954), and (2) neither the Classification Act nor the Back Pay Act create a substantive right to backpay for the period of the claimed wrongful classification (424 U.S. at 397–407, 96 S.Ct. at 953–957). As the Court said:

"Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim—whether it be the Constitution, a statute, or a regulation—does not create a cause of action for money damages unless as the Court of Claims has stated, that basis 'in itself can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.' " 424 U.S. at 401, 96 S.Ct. at 955.

Here, of course, it may be argued that Wiren is suing for money improperly exacted or retained. But even if he is not, the fifth amendment and the statutory forfeiture scheme each plainly mandate compensation, at least in restitutionary measure, to the owner of wrongfully seized property.

Neither is *Lee v. Thornton,* 420 U.S. 139, 95 S.Ct. 853, 43 L.Ed.2d 85 (1975), supportive of the dissent. In *Thornton,* the Court merely held it had no jurisdiction to hear a direct appeal from the district court because the empanelment of a three-judge court had been inappropriate. Under 28 U.S.C. § 2282, a three-judge court is of course required where an Act of Congress is enjoined as unconstitutional.

under either the Tucker Act or under the Administrative Procedure Act to hear this action, I do not reach the issue of whether it also had jurisdiction under the mandamus

> However, since the Tucker Act confers no jurisdiction to award that remedy, a case in which the sole jurisdictional basis alleged is the Tucker Act is by definition not a three-judge case. Where a suit is brought solely under the Tucker Act, no three-judge district court is properly empaneled, and hence no direct appeal lies to the Supreme Court. But this in no way implies that a single-judge district court may not decide a claim for damages under the Tucker Act.
>
> Nor is *Richardson v. Morris,* 409 U.S. 464, 93 S.Ct. 629, 34 L.Ed.2d 647 (1973), of assistance to the dissent. In *Richardson,* the Court reversed the decision of a three-judge district court which had granted the plaintiffs' request for "declarative and injunctive" relief and had ordered the Secretary of Health, Education and Welfare to pay funds to the plaintiffs as part of its specific decree. *Compare Morris v. Richardson,* 346 F.Supp. 494, 500 (N.D.Ga.1972), with *Blanc v. United States, supra,* 244 F.2d at 709. The dissent's reading of *Richardson* is refuted by the Court's later decision in *Hurtado v. United States,* 410 U.S. 578, 93 S.Ct. 1157, 35 L.Ed.2d 508 (1973), in which the plaintiffs' complaint "sought monetary damages under the Tucker Act, 28 U.S.C. § 1346(a)(2) . . . and equivalent declaratory and injunctive relief." 410 U.S. at 579–580, 93 S.Ct. at 1159. The Court never questioned Tucker Act jurisdiction and went on to determine the merits of plaintiffs' claim.
>
> Similarly, in *United States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969), the plaintiff's claim was essentially one for a tax refund and was barred by his failure timely to file a claim for refund under 26 U.S.C. § 7422(a); thus the Court of Claims had no jurisdiction to consider the claim for money damages. And when that court nevertheless proceeded to exercise jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201, the Supreme Court reversed. *King* held that the Court of Claims had no jurisdiction to issue declaratory judgments; it created no limitation on the Court of Claims' Tucker Act jurisdiction to decide claims for money damages.
>
> Indeed, the two decisions cited in recent Supreme Court opinions as the source of the rule that a district court is without power to entertain claims for equitable relief under the Tucker Act—*United States v. Alire,* 73 U.S. (6 Wall.) 573, 18 L.Ed. 947 (1867), and *United States v. Jones,* 131 U.S. 1, 9 S.Ct. 669, 33 L.Ed. 90 (1889)—were suits in which the only relief sought was equitable in nature. It is therefore perfectly understandable that in *Glidden Co. v. Zdanok, supra,* 370 U.S. at 557, 82 S.Ct. 1459,

statute. I, therefore, express no view on the question of whether that statute would provide an independent jurisdictional base for this suit.

Mr. Justice Harlan recognized the rule as "a limitation on the remedial powers of a federal court" but went on to observe:

> "[F]ar from serving as a restriction, this limitation has allowed the Court of Claims a greater freedom than is enjoyed by other federal courts to inquire into the legality of governmental action."

As Mr. Justice Holmes observed more than sixty years ago in *United States v. Emery, Bird, Thayer Realty Company,* 237 U.S. 28, 32, 35 S.Ct. 499, 500, 59 L.Ed. 825 (1915), it is an "inadmissible premise that the great act of justice embodied in the jurisdiction of the Court of Claims is to be construed strictly and read with an adverse eye."

The dissenting view that the APA confers no subject matter jurisdiction on the district court is foreclosed by our prior decisions. The dissenter's conclusion that 19 U.S.C. § 1618 vests the Secretary of the Treasury with absolute, unreviewable discretion cannot be squared with *United States v. U. S. Coin & Currency,* 401 U.S. 715, 721, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), and our decision in *Simons v. United States,* 497 F.2d 1046, 1049 (9th Cir. 1974).

Moreover, as the record shows both the Secretary of the Treasury's denial of a petition for review and remission of the seizure and the Bureau of Customs' denial of a supplemental appeal (*see* R. 42), the dissenter appears to conclude that those requests for relief were rendered invalid as a matter of law by Wiren's failure previously to satisfy the bond requirement of § 1608. Were that conclusion correct (but we do not think it is), it would merely serve to render the bond requirement of § 1608 even more harsh and oppressive with respect to the indigent claimant.

Finally, with respect to the dissenting view that a rational basis for the § 1608 bond requirement renders it impervious to constitutional attack, we point out that the Supreme Court recently held a not-dissimilar state double-bond requirement violative of equal protection because it arbitrarily and irrationally discriminated against a class of appellants. *Lindsey v. Normet,* 405 U.S. 56, 74–79, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972). It should be remembered that a claimant required to post the § 1608 bond will have already delivered to the government the property to which he claims entitlement—itself constituting security of up to $2500—but the claimant's failure to post the $250 bond will nevertheless deprive him of an initial hearing on the propriety of the seizure of that property.

KILKENNY, Circuit Judge (dissenting):

## TUCKER ACT CLAIM

It is settled that the Tucker Act authorizes a judgment for *money damages only* and if a complaint intermingles a claim for a money judgment with the demand for equitable relief, it is beyond the pale of the Act. *Richardson v. Morris,* 409 U.S. 464, 93 S.Ct. 629, 34 L.Ed.2d 647 (1973). The reason is that the jurisdiction of the district court is concurrent with that of the Court of Claims and the Court of Claims has no power to grant equitable relief. *Glidden Co. v. Zdanok,* 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 571 (1962). There, Justice Harlan in speaking to the limited jurisdiction of the Court of Claims—concurrent with the district court under the Act—made it clear that from the very beginning, the Court of Claims had jurisdiction *only to award damages,* not specific relief. *Id.* at 557, 82 S.Ct. 1459. With reference to the jurisdiction of the respective courts, we quote from *Richardson v. Morris, supra.*

"The Tucker Act plainly gives district courts jurisdiction over claims against the United States for money damages of less than $10,000 that are 'founded . . . upon the Constitution.' But the Act has long been construed as authorizing only actions for money judgments and not suits for equitable relief against the United States. See *United States v. Jones,* 131 U.S. 1, [9 S.Ct. 669, 33 L.Ed. 90] (1889). The reason for the distinction flows from the fact that the Court of Claims has no power to grant equitable relief, see *Glidden Co. v. Zdanok,* 370 U.S. 530, 557, [82 S.Ct. 1459, 1476, 8 L.Ed.2d 671] (1962), . . . and the jurisdiction of the district courts under the Act was expressly made 'concurrent with the Court of Claims.'" *Id.* 409 U.S. at 465–466, 93 S.Ct. at 630.

Another Supreme Court case speaking to the limited jurisdiction of the Court of Claims, where the demand for relief was for other than money damages, is *United States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). There the Court in addressing itself to the claim for relief other than money damages said: ". . . This [the claim] is essentially equitable relief of a kind that the Court of Claims has held throughout its history, up to the time this present case was decided, that it does not have the power to grant." *Id.* at 3, 89 S.Ct. at 1502.

A recent expression of the Supreme Court on the subject is *Lee v. Thornton,* 420 U.S. 139, 95 S.Ct. 853, 43 L.Ed.2d 85 (1975), *rev'g* 370 F.Supp. 312 (D.Vt.1974), in which the Supreme Court, in substance, held that the Tucker Act is not a proper jurisdictional vehicle in which to travel to injunctive or declaratory relief under a challenge to the constitutionality of various provisions of the Customs Laws, including § 1608.[1] Here, in addition to a money judgment, the appellant seeks injunctive relief against the enforcement of the forfeiture statute, a declaratory judgment that he is entitled to proceed under the Administrative Procedure Act, and a writ of mandamus directing the officials to return the automobile.

A more recent Supreme Court case, *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), is closely in point. There, the claimant argued that ". . . the Tucker Act fundamentally waives sovereign immunity with respect to any claim *invoking a constitutional provision or a federal statute or regulation,* and makes available any and all generally accepted and important forms of redress, including money damages. It is said that the Government has confused two very different issues, namely, whether there has been a waiver of sovereignty and whether a substantive right has been created, and it is claimed that where there has been a violation of a substantive right, the Tucker Act waives sovereign immunity as to all measures necessary to redress that violation." [Page 400, 96 S.Ct. page 954]. [Emphasis supplied].

---

1. Although 19 U.S.C. § 1608 is not mentioned in the Supreme Court opinion, it is clear from the district court decision that § 1608 was also under constitutional attack.

In answering this argument, the Supreme Court stressed that the Tucker Act was merely jurisdictional and that the asserted entitlement to money damages depended upon whether any federal statute ". . 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" [Page 955, 96 S.Ct. page 955.] The Court went on to comment: "We are not ready to tamper with these established principles because it might be thought that they should be responsive to a particular conception of enlightened governmental policy. . . . In a suit against the United States, there cannot be a right to money damages without a waiver of sovereign immunity, and we regard as unsound the *amici's* argument that all substantive rights of necessity create a waiver of sovereign immunity such that money damages are available to redress their violation." [Page 954, 96 S.Ct. page 954.]

It is clear to me that the Congress never intended that a person could create the right for money damages under the Tucker Act by challenging the constitutionality of the very legislation which forms the basis for his claim.

*ADMINISTRATIVE PROCEDURE ACT*

The majority holds that the district court had jurisdiction to proceed under the provisions of the Administrative Procedure Act, 5 U.S.C. §§ 701–706. The review section of the Act, 5 U.S.C. § 701(a), specifically exempts: (1) statutes which preclude judicial reviews, and (2) agency action which is committed to agency discretion by law. The exercise of discretion in denying a petition for remission or forfeiture is not reviewable. *United States v. One 1961 Cadillac,* 337 F.2d 730, 732 (C.A.6, 1964). Additionally, the Administrative Procedure Act is remedial in character and does not, in itself, create jurisdiction. Subject matter jurisdiction is essential to application of the Act.

*Zimmerman v. United States,* 422 F.2d 326 (C.A.3, 1970), *cert. denied* 399 U.S. 911, 90 S.Ct. 2200, 26 L.Ed.2d 565.[2]

True enough, the Supreme Court has not spoken definitively on the subject. In one instance, *Rusk v. Cort,* 369 U.S. 367, 82 S.Ct. 787, 7 L.Ed.2d 809 (1962), in speaking of "general grants of jurisdiction". *Id.* at 380, 82 S.Ct. at 795, it would seem that Justice Brennan was speaking of something other than pure *jurisdiction* when he mentioned the Declaratory Judgments Act, in the same breath as the Administrative Procedure Act. It is well settled that the Declaratory Judgments Act does not, in itself, confer jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). To the same effect, see *Lee v. Thornton, supra.*

Moreover, since under the provisions of 19 U.S.C. § 1618 absolute discretion is lodged in the agency, judicial review is not available to appellant under 5 U.S.C. § 701(a). *Action on Safety & Health v. F. T. C.,* 162 U.S.App.D.C. 215, 498 F.2d 757, 760–761 (C.A.D.C.1974).

The Ninth Circuit cases cited by the majority are not in point. The jurisdiction found in each of those cases was by way of review from action taken in an agency. Here, the appellant has refused to follow the procedure outlined in either 19 U.S.C. §§ 1608 or 1618 and the Secretary has taken *no action* under those statutes. [Emphasis supplied]. The appellant, in lieu of following the provisions of the statute, has challenged the constitutionality of 19 U.S.C. § 1608, the latter being an integral part of the procedure outlined by the Congress to be followed by a person who desires a remission or a mitigation of the penalties provided for under § 1618.

For that matter, appellant does not claim that he has a right to a review of any action taken by the Secretary. It is his claim that the Administrative Procedure Act is an in-

2. Other cases to the same effect are *Richardson v. United States,* 465 F.2d 844, 849 (C.A.3, 1972), *cert. denied* 410 U.S. 995, 93 S.Ct. 1420, 35 L.Ed.2d 688 (1973); *Chaudoin v. Atkinson,* 494 F.2d 1323, 1329 (C.A.3, 1974); *Pan Ameri-* *can World Airways, Inc. v. C. A. B.,* 129 U.S. App.D.C. 159, 392 F.2d 483, 494 (C.A. 1968); *Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe,* 370 F.2d 529, 532 (C.A.8, 1967).

dependent grant of subject matter jurisdiction under which an action can be prosecuted irrespective of action on the part of an agency. I find no authority to support the majority's position on this jurisdictional claim.

Cases such as *Brandt v. Hickel,* 427 F.2d 53, 55 (C.A.9, 1970), and *Coleman v. United States,* 363 F.2d 190 (C.A.9, 1966), *rev'd on other grounds* 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170 (1968), holding that the Administrative Procedure Act does not permit a trial *de novo* is in support of my position that the Act does not create an independent ground of jurisdiction. Otherwise, the trial would be *de novo,* rather than by review. As late as *United States v. Consolidated Mines & Smelting Co., Ltd.,* 455 F.2d 432 (C.A.9, 1971), speaking to the subject, we said: " '. . . [T]he Administrative Procedure Act does not permit a trial de novo of administrative decisions.' " It is fundamental that if a court is not entitled to receive evidence, it is not a court of original jurisdiction.

Under the provisions of the remission statute, 19 U.S.C. § 1618, absolute discretion is vested in the Secretary of the Treasury. Because appellant did not attempt to file a bond under § 1608, he is in no position to argue that he is entitled to an administrative review of non-existent agency action under that statute. He took no action whatsoever under § 1618.

*CONSTITUTIONAL CHALLENGE*

Again, I disagree with my brethren. Here, we are concerned with fast moving vehicles crossing out international boundary lines. We cannot close our eyes to the thousands of customs violations committed annually on both our Mexican and Canadian borders. The lodging of some discretion in the Customs Officials as to the seizure of the vehicle and the amount, if any, of the bond is absolutely essential to proper administration. The general attitude and conduct of one driver might be entirely different from that of another and this should call into play a wide discretion on the part of the official in charge.

The majority completely overlooks the known fact that the overland transportation of contraband into the United States is by the use of "junkies" or worn-out motor vehicles seldom of a value sufficient to justify the expense of a formal condemnation proceeding. To avoid this fact, the majority say: "However, we cannot believe that Congress either intended to, or may consistently with the Constitution, make enforcement of the forfeiture laws, the primary contemporary justification of which is punishment and deterrence . . . ." Id. at 763. In making this statement, the majority neglects to comment on the recognized distinction between the seizure of *contraband* and vehicles used in its movement and the seizure of *other* property subject to ownership. The legislation does not, as urged by the majority, deny the Fifth Amendment rights of the "poor." If the "poor" elect to violate our Customs Laws and in doing so use valueless types of vehicles, the values of which will not reimburse the government for its formal condemnation expenses, they should be compelled to comply with existing law, the same as others. The poor and the rich are governed by the same Constitution.

I believed our factual background is governed by *United States v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), and *Ortwein v. Schwab,* 410 U.S. 656, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973), cases which severely limited the overall effect of *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), the case upon which the majority relies.

In *Kras,* it is emphasized that the marital relationship and the associated interests that surrounded the establishment and dissolution of the marriage in *Boddie* had no connection whatsoever with the area of economics and social welfare involved in special proceedings such as in bankruptcy. That being so, the Court reasoned that the applicable standard in measuring the propriety of the Congressional classification, *is that of rational justification.* Beyond question, the enforcement of our Customs Laws should be classified in the area of economics

and our general social welfare, rather than in the donnybrook of the *Boddie* marital relationship where one party was desperately attempting to obtain a divorce from the other.

*Ortwein v. Schwab, supra,* is even more closely in point. There, the Supreme Court recognized that the pending litigation involving welfare payments was " . . . in the area of economics and social welfare." *Id.* 410 U.S. at 660, 93 S.Ct. at 1175, and that since no suspect classification, such as race, nationality or alienage was present, that the applicable standard was that of rational justification as applied in *Kras.* In *Kras,* as in *Ortwein,* the rational justification for the payment of fees was that it would produce revenue to assist in offsetting the expenses of administering the system. Clearly, the purpose of requiring the bond under the challenged legislation in the case before us was to make certain there would be a fund available to assist in the payment of the expenses of seizure of the property and attempted confiscation. Surely, it is not beyond our power to judicially notice that a forfeiture proceeding, if resisted by a claimant, could amount to well in excess of $2,500.00. Certainly, there is no suspect classification in the present case.

I would hold that the legislation under attack is an integral part of the laws protecting our borders against smuggling and has a constitutionally rational basis.

### CONCLUSION

I would affirm the judgment of the lower court.