UNITED STATES of America, Plaintiff,

v.

**164 PIECES OF JEWELRY,**
**in rem, Defendant.**

**Civ. No. 90–1248–BE.**

United States District Court,
D. Oregon.

Sept. 5, 1991.

Charles H. Turner, U.S. Atty., D. Or., Leslie J. Westphal, Asst. U.S. Atty., Portland, Or., for plaintiff.

Catherine S. Travis, Weiss, Jensen, Ellis & Botteri, Portland, Or., for claimant, Estate of Jacques D. Pierson.

## OPINION

BELLONI, District Judge.

This is an action to forfeit 164 pieces of jewelry which were seized by the United States Customs Service. The plaintiff, the United States, and the claimant, the Estate of Jacques D. Pierson, make cross-motions for summary judgment.

## UNDISPUTED FACTS

On September 12, 1989, Jacques Pierson arrived at the Portland International Airport, Portland, Oregon, on a flight from Tokyo, Japan. During the primary inspection for Customs, Pierson completed Customs form 6059B, declaring that he was entering $80.00 of merchandise into the United States. Pierson was directed to secondary inspection, where U.S. Customs Inspector Pat Murphy noted that Pierson was carrying a sports jacket over his arm, and was being careful to lift the coat only by the collar. Pierson told Murphy that he had visited Hong Kong and Japan, and that he was now going to Florida to visit his children. When Murphy had completed the inspection of Pierson's luggage, he noticed that Pierson was no longer carrying the jacket, and asked Pierson where the jacket was. Pierson replied that he had placed it in a bag that had already been inspected. Murphy inspected the jacket and found 164 pieces of jewelry in the pockets.

Pierson was advised of his rights and stated that he wished to speak to U.S. Customs Special Agent Jonelle A. Clinton about the jewelry. Pierson stated that he was a citizen of France, and that he was attempting to transfer his assets to the United States. He said that he owned eight homes in Florida, one of which he used as his residence while in the United States; that his three children were attending college in Florida; and that he was separated from his wife. Pierson further stated that on September 4, 1989, he and his girlfriend traveled from Florida to Hong Kong, where they stayed for approximately one week. During this time Pierson purchased the defendant jewelry, which he said was worth approximately $61,000, at the Gems Jewelry Company. Pierson said that he intended to resell the jewelry in France, and that this was the first time he had purchased jewelry for resale. The Customs Service seized the defendant jewelry and allowed Pierson to leave the Customs area.

On September 26, 1989, Pierson sent a letter to the District Director of Customs, in which he explained his version of the

facts and sought return of the jewelry. Pierson stated that in August, 1989, he entered into negotiations with a company in Versailles, France, regarding the sale of preset jewelry made in Hong Kong. He went to Hong Kong on September 5, 1989, and located and purchased merchandise for the French company. He left Hong Kong for Tokyo on September 9, in order to discuss mining business with a company in Japan. He did not declare the jewelry in either Japanese or United States Customs because the final destination of the jewelry was France, and it would not be imported into either Japan or the United States. When he arrived in Portland, he was exhausted after a long flight and knew that he had only a limited time before his connecting flight to the East Coast. Since he was not importing the jewelry, he decided to keep the jewelry in his jacket without declaring it, but to explain the true facts if questioned. Pierson states that he made a mistake, but did not intend to defraud the Customs Service, and that he never had any problem with U.S. Customs before.

On February 12, 1990 U.S. Customs Inspector Jon Shulmire received an anonymous telephone call regarding the defendant jewelry. The caller stated that the jewelry was purchased with the caller's money, and that the jewelry had been brought into the country for him. The caller also stated that Pierson's explanation that the merchandise was being transshipped to France was false.

On March 19, 1990, Special Agent Clinton received a call from Sylvestor Bestwina, who identified himself as the caller of February 12, 1990. Bestwina told Clinton that Bestwina met Pierson in August, 1989, after Bestwina answered a newspaper advertisement wherein Pierson offered to trade real estate for other merchandise. According to Bestwina, Pierson stated that he knew where to purchase jewelry at a good price in Hong Kong and where to sell it at a good profit in the United States. Bestwina agreed to provide the capital, and they both agreed to share the profits from the sale of the jewelry. On October 14, 1989, Bestwina and Pierson traveled to Hong Kong from Los Angeles, California. While in Hong Kong, Bestwina purchased approximately $90,000 worth of jewelry from Gems Jewelry. Bestwina and Pierson traveled back to Los Angeles on October 20, 1989.

Bestwina said that Pierson told him that Pierson had exchanged some property for jewelry in September, and that some of the jewelry was seized by Customs when he failed to declare it. According to Bestwina, Pierson said that he never declared anything, and that Bestwina should do the same. Bestwina subsequently had an appraisal done on the jewelry he had purchased, and learned that he had paid too much for it. Bestwina also learned that Pierson received a commission of $13,000 from Gems Jewelry for bringing Bestwina to the store.

On March 1, 1990, Jacques Pierson died from a gunshot wound to the head. The death was considered to be a suicide. Pierson was separated from his wife, Muriel Pierson, at the time of these events, but they were legally married at all relevant times. Muriel Pierson is the personal representative of Pierson's estate. The estate is the only claimant to the defendant jewelry.

## DISCUSSION

Under federal law, persons arriving in the United States are required to declare all articles acquired abroad which are in their possession at the time of arrival. 19 C.F.R. §§ 148.11, 148.13. Any article which is not included in the declaration and is not mentioned before examination of the baggage begins is subject to forfeiture under 19 U.S.C. § 1497. The traveler has the burden of coming forward with items that have to be declared. *United States v. 66 Pieces of Jade*, 760 F.2d 970, 974 (9th Cir. 1985).

In civil forfeiture actions brought under 19 U.S.C. § 1497, there is a shifting burden of proof at trial and on a motion for summary judgment. *66 Pieces of Jade, supra*, 760 F.2d at 973. The government must first make a preliminary showing of probable cause to believe that the property

was involved in a violation. 19 U.S.C. § 1615. The burden then falls on the claimant either to refute the government's showing of probable cause, or to prove that there was no violation. 760 F.2d at 973–74. If the claimant chooses to prove that there was no violation, he must do so by a preponderance of the evidence. *Id.*

■ In this case, the government has presented evidence which meets its burden to show probable cause to believe that the 164 pieces of jewelry are forfeitable. The evidence is undisputed that Pierson acquired the jewelry in Hong Kong, and that he did not declare the jewelry before his baggage was searched. The government has submitted evidence that could support a finding that Pierson intended to sell the jewelry in the United States, and that the jewelry was thus subject to duty upon arrival in the United States. Declaration of Jonelle A. Clinton, p. 3–4.

Pierson's estate contends that the jewelry should not be forfeited because 1) the jewelry was not intended for sale in the United States, but was merely being transshipped to France; 2) Pierson inadvertently or mistakenly failed to declare the jewelry because he was exhausted and in a hurry; 3) the claimant is an innocent owner of the jewelry; and 4) remission of the forfeiture should be granted.

The first contention seeks to avoid section 1497 by establishing that the jewelry was not subject to duty in the United States. Jacques Pierson made statements, both on September 12, 1989, and in his subsequent letter, that could support such a finding. Section 1497 and the regulations interpreting it require that all articles acquired abroad are to be declared, subject only to the exceptions in 19 C.F.R. § 148.-13. Under section 148.13(c) certain items need not be declared in writing, including articles accompanying a person in transit to a place outside U.S. Customs territory. However, such items must be declared orally to the Customs officer. 19 C.F.R. § 148.13(b).

The evidence is undisputed that Jacques Pierson did not declare the jewelry either orally or in writing before the inspection of his baggage. Thus, as a matter of law the jewelry is forfeitable under 19 U.S.C. § 1497, whether or not it was subject to duty. Even if it is accepted that Pierson failed to declare the jewelry inadvertently or by mistake, this does not constitute a defense to forfeiture. The Supreme Court has stated that "[t]o succeed in a forfeiture action under § 1497 ... the Government need only prove that the property was brought into the United States without the required declaration; the Government bears no burden with respect to intent." *One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 234, 93 S.Ct. 489, 491–92, 34 L.Ed.2d 438 (1972).

The next contention is that Muriel Pierson is an innocent owner of the jewelry. Muriel Pierson argues that under Florida law, she has an interest in property acquired by her spouse, that she had no knowledge of her husband's allegedly illegal activities, and that she did not even know that he was bringing any property into the United States. However, this argument is subject to two fatal flaws.

■ First, Congress has not provided an innocent owner defense in connection with Customs forfeitures, unlike drug forfeitures, 21 U.S.C. §§ 853, 881, and money laundering forfeitures, 18 U.S.C. §§ 981, 982. The Supreme Court has stated that under the common law, "the innocence of the owner of property subject to forfeiture has almost uniformly been rejected as a defense." *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 683, 94 S.Ct. 2080, 2092, 40 L.Ed.2d 452 (1974). The Court suggested in dicta that the result might be different where an owner proves that he was uninvolved and unaware of the illegal activity, and that he had done all that reasonably could be expected to prevent the illegal use of the property. *Id.* at 689–90, 94 S.Ct. at 2094–95. However, even if the dicta were binding, Muriel Pierson has submitted no evidence which could support a finding that she acted diligently to protect her alleged interest in the jewelry.

Second, Muriel Pierson is not a claimant before the court in her individual capacity, but only as personal representative of the Estate of Jacques Pierson. Default has been entered as to all other potential claimants. Thus, the claim of the estate is purely derivative of any claim or defense of the deceased Jacques Pierson, and the estate cannot raise defenses which might be available to individuals who stand to inherit from the estate. *United States v. $129,374 in U.S. Currency*, 769 F.2d 583, 587 (9th Cir.1985) (claimant who was conservator of fugitive's estate subject to doctrine which would bar claim by fugitive).

Finally, claimant contends that remission of forfeiture should be granted, based upon the claimed transshipment of the jewelry, and the exhaustion and inadvertent mistake of Jacques Pierson in failing to declare the jewelry. The Secretary of the Treasury may grant mitigation or remission of a forfeiture under 19 U.S.C. § 1497, if the Secretary finds that the forfeiture was incurred without willful negligence or intention to defraud or violate the law, or if there are mitigating circumstances. 19 U.S.C. § 1618.

Remission, however, is an administrative remedy left to the discretion of the Secretary of the Treasury. The district court is without jurisdiction to remit or mitigate a forfeiture other than a forfeiture for violating Internal Revenue laws relating to liquor. *Simons v. United States*, 497 F.2d 1046, 1049 (9th Cir.1974). In this case, claimant's petition for remission was denied by the Customs Service initially and upon two supplemental petitions. Such an administrative denial of a petition for remission is not subject to judicial review. *United States v. Wood*, 851 F.2d 185, 188 (8th Cir.1988) (drug forfeiture case).

Thus, under the undisputed facts, the defendant jewelry is subject to forfeiture pursuant to 19 U.S.C. § 1497. Claimant has not submitted evidence which could support a defense to forfeiture. The only claim before the court is that of the Estate of Jacques Pierson, to which the innocent owner defense is not applicable. This court has no power to grant remission of the forfeiture, or to review the decision of the Secretary of the Treasury to deny remission.

## CONCLUSION

The motion of the United States for summary judgment is granted (# 17). The motion of claimant, the Estate of Jacques Pierson, is denied (# 15). The United States shall submit an appropriate form of judgment for signature.