HIGH STAR TOYS, INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 93–399C.

United States Court of Federal Claims.

Oct. 4, 1994.

Peter A. Herrick, Miami, FL, atty. of record, for plaintiff.

A. David Lafer, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, for defendant.

### MEMORANDUM OF DECISION

HARKINS, Senior Judge:

Pursuant to order, oral argument was heard on September 28, 1994, in the United States Court of Federal Claims, National Courts Building, 717 Madison Place, N.W., Washington, D.C. Pleadings and motion papers relevant to the argument were identified on the record.

The complaint asserts jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1), and seeks a refund of amounts paid to the U.S. Customs Service (Customs) in connection with two shipments in 1992 of toys that were seized under 19 U.S.C. § 1595a(c) for violations of the Federal Hazardous Substances Act (FHSA), 15 U.S.C. § 1263. Defendant's answer asserts a counterclaim.

At the end of argument, a bench ruling was made. Reasons for the decision were stated on the record.

*　　*　　*　　*　　*　　*

The material facts are not in dispute.

Plaintiff, a corporation doing business in California, is a toy wholesaler which imports many of its products from overseas. One such product is a toy described as "Abacus Car, Id No. CY–201" which is manufactured in Taiwan. The port of entry is the Los Angeles/Long Beach Harbor. The two shipments in plaintiff's claim for refund arrived at the port of entry on September 22, 1992 (shipment No. 1) and on October 4, 1992 (shipment No. 2). The same administrative procedures were applied to both shipments.

The shipments were detained at the port of entry by a trade sensitive team composed of representatives of Customs and the Consumer Products Safety Commission (CPSC) that was engaged in a joint enforcement effort, directed at possible commercial fraud importations. Shortly after detention, examination showed the shipments failed use and abuse field tests (Sept. 25, 1992—shipment No. 1; Oct. 12, 1992, shipment No. 2); samples were sent to the CPSC for laboratory analysis; examination and testing by the CPSC revealed the abacus car failed use and abuse testing; and Customs notified plaintiff that the shipments were prohibited from entry and were seized pursuant to 19 U.S.C. § 1595a(c) for violations of 15 U.S.C. § 1263 (The official dates of the seizures were Nov. 5, 1992—shipment No. 1; and Jan. 19, 1993—shipment No. 2).

After the detention, and during the period of the CPSC laboratory analyses, plaintiffs customs broker asked CPSC for permission to return the noncomplying goods to the country of origin. (Oct. 28, 1992—shipment No. 1; Jan. 29, 1993—shipment No. 2). On October 28, 1992, the Taiwanese manufacturer acknowledged to the CPSC that the abacus cars involved in the shipments did not comply with CPSC's standards, and requested the shipments be returned. After the official notice of Customs' seizures, plaintiff's customs broker requested Customs to allow plaintiff to return the shipments back to the country of origin (Nov. 19, 1992—shipment No. 1; Feb. 4, 1993—shipment No. 2).

The official notices of Customs' seizures included advice on procedures applicable to petitions for relief pursuant to 19 U.S.C. § 1618 and 19 C.F.R. Part 171.11. After the official seizure notices, plaintiff filed formal requests that judicial or administrative forfeiture proceedings be deferred so that administrative relief could be sought (Nov. 20, 1992—shipment No. 1); Feb. 2, 199[3]—shipment No. 2). By making these requests, plaintiff acknowledged it waived the right to immediate commencement of forfeiture proceedings.

Customs' decision on plaintiff's petitions for relief and requests to return the shipments to the country of origin was to remit forfeitures on the payment of an amount that was 52.2 percent of the forfeiture value, and to allow exportation on receipt of approval from CPSC (on shipment No. 1, the forfeiture value was $15,181—the mitigated amount was $7,920; on shipment No. 2, the forfeiture value was $6,823—the mitigated amount was $3,559.90). The decisions were based on the fact that violations of 15 U.S.C. § 1263 had occurred (Dec. 3, 1992—shipment No. 1; Feb. 23, 1993—shipment No. 2).

On December 9, 1992, the CPSC notified plaintiff's customs broker that there was no objection to export of the noncomplying abacus cars and that Customs would be advised of the decision. Plaintiff's counsel filed supplemental petitions for relief that requested the assessed amounts be canceled or reduced to a *de minimis* amount (Dec. 31, 1992—shipment No. 1; Mar. 11, 1993—shipment No. 2). Customs Regional Director, Pacific Region, denied both supplemental petitions on June 3, 1993, and plaintiff's counsel was so advised on June 8, 1993.

On June 1, 1993, Hold Harmless and Indemnification Agreements for the release of seized property were executed; on June 7, 1993, plaintiff paid the mitigated amounts; and on June 15, 1993, plaintiff paid the outstanding storage charges and retrieved the toys for exportation to Taiwan.

*　　*　　*　　*　　*　　*

■ Defendant's motion to dismiss is based on RCFC 12(b)(1), lack of subject matter jurisdiction. Dismissal of a claim under the Tucker Act on the basis of the pleadings precludes consideration of supporting evidence on substantive merits. The procedure is drastic and should be used only when clearly appropriate. The procedure for rendering a final dismissal for want of jurisdiction should be used sparingly. *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).

■ Factual inquiry on a motion to dismiss under RCFC 12(b) is limited. In passing on a motion to dismiss, whether on the ground of lack of subject matter jurisdiction or for failure to state a cause of action, the allegations in the complaint are to be considered favorably to the pleader. The issue is not whether the plaintiff ultimately will prevail; it is whether the plaintiff is entitled to offer evidence to support facts alleged in the complaint. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *see also Aleut Community of St. Paul Island v. United States,* 480 F.2d 831, 838, 202 Ct.Cl. 182 (1973).

■ "Subject-matter jurisdiction of the federal courts is initially determined according to the 'well-pleaded complaint.'" *Allied–General Nuclear Servs. v. United States,* 839 F.2d 1572, 1575 (Fed.Cir.) (citing *Gronholz v. Sears, Roebuck & Co.,* 836 F.2d 515 (Fed.Cir. 1987)), *cert. denied,* 488 U.S. 819, 109 S.Ct. 61, 102 L.Ed.2d 39 (1988). Subject matter jurisdiction relates to the court's general powers to adjudicate in specific areas of substantive law. The subject matter of a dispute between the parties on the facts peculiar to a specific claim under the Tucker Act may implicate the consent of the sovereign to be sued, but such jurisdictional concepts do not limit the subject matter jurisdiction of the court.

■ Plaintiff's Tucker Act claim for a refund is founded on alleged violations of the U.S. customs laws. Historically, refunds for improper collections of customs duties, and the forfeiture provisions of the customs laws, have been considered to be within the scope of the Tucker Act. *See Simons v. United States,* 497 F.2d 1046, 1049 (9th Cir.1974); *Doherty v. United States,* 500 F.2d 540, 205 Ct.Cl. 34 (1974) (Forfeiture under 19 U.S.C. § 1595a(a)—alleged to be a taking); *Trayco Inc. v. United States,* 994 F.2d 832 (Fed.Cir. 1993) (District court has jurisdiction under Tucker Act to review legality of penalty imposed by Customs Service).

For purposes of dismissal on the pleadings under RCFC 12(b)(1), the complaint states claims within the subject matter jurisdiction of this court. *See Mindes v. Seaman,* 453 F.2d 197, 198 (5th Cir.1971); *Bray v. United States,* 785 F.2d 989, 992 (Fed.Cir.1986); *Merck & Co. v. United States,* 24 Cl.Ct. 73, 77–79 (1991). Accordingly, defendant's motion to dismiss under RCFC 12(b)(1) must be denied.

■ Defendant's motion to dismiss was considered as if filed under RCFC 12(b)(4), failure to state a claim upon which relief can be granted. With respect to a motion to dismiss under RCFC 12(b)(4), a complaint should not be dismissed for failure to state a claim upon which relief can be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The court must "assume each well-pled factual allegation to be true and indulge in all reasonable inferences in favor of the nonmovant." *Chang v. United States,* 859 F.2d 893, 894 (Fed.Cir. 1988) (citing *Owen v. United States,* 851 F.2d 1404, 1407 (Fed.Cir.1988)).

■ A motion under RCFC 12(b)(4) is treated as one for summary judgment when matters outside the pleadings are presented to and are not excluded by the court. In this case, defendant's motion included a 37–page appendix that documented each stage of Customs treatment of the shipments from arrival at the port of entry to their exportation back to Taiwan. Plaintiff's response included as an appendix a 17–page June 17, 1993, notice from the CPSC to plaintiff to show cause why civil penalties should not be assessed for violation of the FHSA, 15 U.S.C. § 1264. CPSC advised plaintiff that its compliance staff intends to recommend to the Commis-

sion that it refer this matter to the Department of Justice for the filing of a civil action in federal district court to seek an appropriate civil penalty. The listing of violative products included with the notice to show cause contained 33 items that the CPSC categorized as 17 separate series of violations since November 16, 1990.

 The pleadings and the motion papers adequately develop all material factual issues. In the circumstances, a full trial is unnecessary and would be useless. "Useless" in this context means that more evidence than is already available in connection with a motion for summary judgment could not reasonably be expected to change the result. *Pure Gold, Inc. v. Syntex (USA) Inc.*, 739 F.2d 624, 626 (Fed.Cir.1984). The core of plaintiff's case is the contention that enforcement of the FHSA is the exclusive responsibility of the CPSC; that once the CPSC gave its approval for exportation of the toys it was illegal for Customs to retain possession and to assess mitigation payments and storage costs as conditions for exportation of the toys. Resolution of plaintiff's contention and the authority of Customs in the circumstances is determined by analysis of applicable statutes and regulations. Such analysis involves solely questions of law. Disposition by summary judgment procedure, accordingly, is appropriate.

There is some confusion between the parties as to whether the payment to Customs for the seizure and storage charges properly can be called a penalty. This confusion results in part from plaintiff's concentration on the powers of the CPSC under FHSA, and the failure to recognize that Customs authority arises under separate and different statutes. The confusion is further complicated by the June 3, 1992, letter of Customs Acting Regional Commissioner that erroneously referred to the mitigated payment as a penalty "assessed pursuant to 19 U.S.C. § 1595a(*b*)" when in fact the seizure was pursuant to 19 U.S.C. § 1595a(*c*) (emphasis added).

The provisions of 19 U.S.C. § 1595a(b) do not apply to plaintiff's claim for a refund or to the procedures administered by Customs relative to the toys. That subsection deals with penalties for aiding unlawful importa-

tion; it provides that such persons may be liable to a penalty equal to the value of the articles introduced or attempted to be introduced. Plaintiff's claim challenges Customs' administration of 19 U.S.C. § 1595a(c). That subsection reads:

(c) Merchandise introduced contrary to law

Any merchandise that is introduced or attempted to be introduced into the United States contrary to law (other than in violation of section 1592 of this title) may be seized and forfeited.

By amendment on December 8, 1993, section 1595a(c) was expanded substantially. Pub.L. No. 103–182, title VI § 624, 107 Stat 2187. Customs procedural actions with respect to the 1992 shipments, and plaintiff's payments of the mitigated amounts and storage charges, were completed before the 1993 amendment was enacted.

The FHSA includes toys in the definitions of "misbranded hazardous substances" (15 U.S.C. § 1261(p)) and "banned hazardous substances" (15 U.S.C. § 1261(q)(1)). The Act prohibits the introduction or delivery for introduction into interstate commerce any misbranded or banned hazardous substance (15 U.S.C. § 1263(a)). Any person who violates the provisions of section 1263 shall be guilty of a misdemeanor and subject to a maximum fine of $500 or imprisonment for 90 days. For offenses committed with intent to defraud or mislead, or for second and subsequent offenses, the maximum penalty may be a fine of $3,000 or imprisonment for one year (15 U.S.C. § 1264(a)). The Act also provides for seizure of misbranded or banned hazardous substance "when introduced into or while in interstate commerce or while held for sale ... in interstate commerce ..." (15 U.S.C. § 1265(a)).

The concept of the right of the sovereign to effect a seizure and forfeiture of property has a unique historical background, and the content of the terms "seizure" and "forfeiture" has been the subject of numerous judicial examinations. *See Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 680–83, 94 S.Ct. 2080, 2090–92, 40 L.Ed.2d 452 (1974); *Austin v. United States*, —— U.S.

——, ——–——, 113 S.Ct. 2801, 2806–10 (1993). Analysis has involved consideration of whether the activity incurred in a criminal or civil context, whether forfeiture was punitive or remedial, whether the property itself was "guilty" or on forfeiture was removed from concepts relative to private rights in property, and the extent to which forfeiture involved constitutional questions under the Fourth, Fifth and Eighth Amendments. Forfeitures under the customs laws generally have been treated as civil penalties, comparable to those imposed on tax evaders. *Doherty v. United States*, 500 F.2d at 545.

 The most recent forfeiture decision, *Austin*, holds that the excessive fines provision of the Eight Amendment applies to forfeitures of property under 21 U.S.C. §§ 881(a)(4) & (a)(7). The forfeiture in that case involved a mobile home and body shop used to facilitate the sale of drugs. It was held that the forfeiture was a monetary punishment, subject to Eighth Amendment limitations.

Plaintiff argues that the decision in *Austin* supports its position that only the CPSC, not Customs, prosecutes violations of the FHSA, and that the amount paid to Customs as the result of the seizures to enforce the FHSA is an excessive fine in violation of the Eighth Amendment. The amounts paid are said to be excessive because they duplicate the actions currently being taken by the CPSC on identical facts. *Austin* cannot be stretched so far. The ongoing CPSC action may result in an attempt by the Attorney General to obtain civil penalties against plaintiff, but it does not proceed on the basis of the forfeiture provisions of the FHSA. The CPSC actions are not duplicative of the Customs actions. Further, if the mitigated amounts involved in forfeiture of goods for customs violations are considered, under *Austin*, to be a monetary punishment rather than remedial liquidated damages, the facts are not apposite. The mitigated amounts in this case relate to a banned hazardous substance, not to non-contraband separate property used to facilitate an illegal transaction. A portion of the value of the toys seized and banned could not be considered excessive in relation to the offense committed.

The CPSC was created in 1973 under the Consumer Products Safety Act (CPSA), 15 U.S.C. §§ 2051–83. The purposes of the CPSC include provision of protection to the public against unreasonable risks of injury associated with consumer products, assistance to consumers in evaluating comparative safety of consumer products, and the development of uniform safety standards for consumer products. In addition to the CPSA and the FHSA, the CPSC administers the Flammable Fabrics Act (15 U.S.C. §§ 1191 et seq.), the Poison Prevention Packaging Act of 1970 (15 U.S.C. §§ 1471 et seq.) and the Refrigerator Safety Act of 1956 (15 U.S.C. §§ 1211 et seq.).

The CPSC, in order to protect the American consumer from hazardous consumer products, seeks to ensure that importers and foreign manufacturers, and domestic distributors, carry out their responsibilities under the five Acts. The statutory structure that confers authority to the CPSC under the CPSA, FHSA, and the other Acts, is designed so that the CPSC works cooperatively with Customs in its exercise of the authority conferred under the Customs laws. Historically, foreign made products entering the United States were "cleared" at Customs by agencies with particular jurisdiction over those products. The CPSC has jurisdiction over a far larger number of products entering the United States than any previous agency. Imported foreign made products enter the United States through over 300 ports of entry. For CPSA to "clear" the imports of foreign manufactured products, in a manner to avoid costly delays, it necessarily must rely on Customs assistance and cooperation.

Customs is authorized to inspect any merchandise arriving at a port of entry to ensure compliance with laws of the United States. The statute, 19 U.S.C. § 1467, provides:

> Whenever a vessel from a foreign port or place or from a port or place in any Territory or possession of the United States arrives at a port or place in the United States or the Virgin Islands, whether directly or via another port or place in the United States or the Virgin Islands, the appropriate customs officer for

such port or place of arrival may, under such regulations as the Secretary of the Treasury may prescribe and for the purpose of assuring compliance with any law, regulation, or instruction which the Secretary of the Treasury or the Customs Service is authorized to enforce, cause inspection, examination, and search to be made of the persons, baggage, and merchandise discharged or unladen from such vessel, whether or not any or all such persons, baggage, or merchandise has previously been inspected, examined, or searched by officers of the customs.

The FHSA in 15 U.S.C. § 1263(a) prohibits:

(a) The introduction or delivery for introduction into interstate commerce of any misbranded hazardous substance or banned hazardous substance.

The CPSA provides that the Secretary of the Treasury shall obtain without charge and deliver to the Commission, upon the latter's request, a reasonable number of samples for consumer products being offered for import (15 U.S.C. § 2066(b)). If it appears from examination of such samples or otherwise that a product can be so modified that it need not be refused admission, the Commission may defer final determination as to the admission of such product and, in accordance with such regulations as the Commission and the Secretary of the Treasury shall jointly agree to, permit such product to be delivered from customs custody under bond for the purpose of permitting the owner or consignee an opportunity to so modify such product. 15 U.S.C. § 2066(c). Similar authority is provided in the FHSA specifically. That Act, in 15 U.S.C. § 1273(a), provides:

The Secretary of the Treasury shall deliver to the Commission, upon its request, samples of hazardous substances which are being imported or offered for import into the United States, giving notice thereof to the owner or consignee, who may appear before the Commission and have the right to introduce testimony. If it appears from the examination of such samples or otherwise that such hazardous substance is a misbranded hazardous substance or banned hazardous substance or in violation of section 1263(f) of this title, then such

hazardous substance shall be refused admission, except as provided in subsection (b) of this section. The Secretary of the Treasury shall cause the destruction of any such hazardous substance refused admission unless such hazardous substance is exported, under regulations prescribed by the Secretary of the Treasury, within ninety days of the date of notice of such refusal or within such additional time as may be permitted pursuant to such regulations.

The FHSA, in 15 U.S.C. § 1273(b) recognizes the continuing applicability of the customs laws and regulations. That subsection provides:

Pending decision as to the admission of a hazardous substance being imported or offered for import, the Secretary of the Treasury may authorize delivery of such hazardous substance to the owner or consignee upon the execution by him of a good and sufficient bond providing for the payment of such liquidated damages in the event of default as may be required pursuant to regulations of the Secretary of the Treasury.

The Customs laws and the CPSC statutes reference each other and are designed to work separately in their respective fields. No statute provides exclusive authority to the CPSC for enforcement of the FHSA; no statute deprives Customs of its authority to retain and seize property that is found to be in violation of the FHSA.

The CPSC regulations ban toys that in normal use present an unreasonable risk of personal injury or illness. For merchandise introduced into interstate commerce after January 1, 1980, the CPSC regulation, 16 C.F.R. § 1500.18(a)(9), applies to any toy or other article intended for use by children under 3 years of age which presents a choking, aspiration or ingestion hazard because of small parts.

The test criteria defined in the regulation, 16 C.F.R. § 1501.4(a), provides no toy or other children's article "shall be small enough to fit entirely within a cylinder with the dimensions" that are set out in a figure in the regulation. In testing to ensure compliance, the dimensions of the Commission's

test cylinder will be no greater than those shown in said figure. The regulation provides detailed guidance for administering the test. 16 C.F.R. § 1501.4(b).

In this case, the initial field inspection disclosed the toys failed the use and abuse test. Examination in the CPSC laboratory confirmed that the toys properly satisfied the criteria for a banned hazardous substance. There is no dispute that the toys in fact did not comply with the requirements. Both the manufacturer in Taiwan and plaintiff acknowledge the toys were a banned hazardous substance.

Under the applicable statutes and regulations, the seizure and the forfeiture was lawful. Plaintiff did not pursue his right to challenge any error in the seizure or the forfeiture. Plaintiff waived his right to judicial or administrative forfeiture proceedings in order to seek administrative relief. In such circumstances, the mitigation authority of Customs came into operation. The authority of Customs to mitigate a lawful seizure is provided in 19 U.S.C. § 1618:

> Whenever any person interested in any vessel, vehicle, aircraft, merchandise, or baggage seized under the provisions of this chapter, or who has incurred, or is alleged to have incurred, any fine or penalty thereunder, files with the Secretary of the Treasury if under the customs laws, and with the Commandant of the Coast Guard or the Commissioner of Customs, as the case may be, if under the navigation laws, before the sale of such vessel, vehicle, aircraft, merchandise, or baggage, a petition for the remission or mitigation of such fine, penalty, or forfeiture, the Secretary of the Treasury, the Commandant of the Coast Guard, or the Commissioner of Customs, if he finds that such fine, penalty, or forfeiture was incurred without willful negligence or without any intention on the part of the petitioner to defraud the revenue or to violate the law, or finds the existence of such mitigating circumstances as to justify the remission or mitigation of such fine, penalty, or forfeiture, may remit or mitigate the same upon such terms and conditions as he deems reasonable and just, or

order discontinuance of any prosecution relating thereto.

The merchandise remained in the ITT warehouse from the date of seizure to the date of departure for return to Taiwan. Both the manufacturer and plaintiff wanted it released for return to Taiwan. It was released as soon as the CPSC approval to return the merchandise was received by Customs. Continuation of storage was an expense and retention for use in proceedings to test legality of the forfeiture was unnecessary. Surely, the situation was such that Customs could find the existence of circumstances that justified mitigation of the forfeiture.

The amount of the mitigation is discretionary and not subject to judicial examination. There is no merit to plaintiff's contention that Customs could not mitigate the forfeiture until after proceedings on the CPSC notice to show cause were completed. Whether plaintiff's conduct over the years warrants the application of civil penalties provided by the CPSA and the FHSA is not relevant to Customs' exercise of its authority to mitigate the forfeiture. The forfeiture is supported by two CPSC testings that showed the toys were not in compliance with FHSA standards and the failures showed the toys presented a substantial risk of serious injury or death. Further proceedings under the CPSC show cause order will not alter this status of the toys that were returned to Taiwan.

For the foregoing reasons, defendant's motion to dismiss under RCFC 12(b)(1) for lack of subject matter jurisdiction is denied. Defendant's motion, treated as under RCFC 12(b)(4), and, by the inclusion of matters outside the pleadings, converted to one for summary judgment under RCFC 56, is allowed.

The motion papers do not treat with, and the facts material to defendant's motion for summary judgment do not dispose of, defendant's counterclaim for breach of the Hold Harmless Agreement and for court costs and attorneys' fees. That issue will be resolved

in further proceedings. Final judgment will be entered subsequently.